**Mariano ESCALONA and Terese Escalona, Appellants,**

v.

**John W. COMBS, Appellee.**

**No. 01–85–01051–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 1986.

Wendell S. Loomis, Loomis & McKenney, Houston, for appellants.

David B. Dickinson, Houston, for appellee.

Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from an order vacating an out of state default judgment. The issue on appeal is whether a New York court had jurisdiction to render a personal judgment against the appellee.

The Supreme Court of Suffolk County, New York entered a default judgment against the defendants in a cause of action styled "Mariano Escalona and Terese Escalona vs. Family Motors, Inc., Commercial Services Corp., and John W. Combs, doing business as Lone Star Adjusters." The court awarded the plaintiffs $3,957 in compensatory damages and $5,000 in punitive damages, plus interest and costs for the wrongful repossession of their car.

Thereafter, the appellants filed suit in Harris County seeking to enforce the New York judgment against the appellee and Family Motors. Their petition alleged that Ray Hardy, the District Clerk of Harris County, Texas, had failed to enforce the judgment in accordance with the Uniform Enforcement of Foreign Judgments Act although the appellants had filed the appropriate documents and paid the necessary fees. In response, the appellee moved to vacate the judgment on the ground that the New York court never acquired personal jurisdiction over him. After a hearing on the motion, the lower court ordered that the judgment be vacated for lack of personal jurisdiction. Neither Family Motors nor Commercial Services Corp. are before this court.

In their sole point of error, the appellants contend that the trial court erred in vacating the enforcement of the foreign judgment. They argue that the New York court had personal jurisdiction over the appellee as a matter of law.

It is fundamental that a state must give the final judgment of a sister

state the same force and effect it is entitled to in the state in which it is rendered. U.S. Const. art. IV, § 1. *See Medical Administrators, Inc. v. Koger Properties, Inc.,* 668 S.W.2d 719, 721 (Tex.App.—Houston [1st Dist.] 1983, no writ); *General Exploration Co. v. David,* 596 S.W.2d 145, 146 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ dism'd). Where a foreign judgment appears to be a valid, final, and subsisting judgment entered by a court of general jurisdiction, its introduction makes a prima facie case for the party seeking to enforce it, and the burden of showing its invalidity is upon the party attacking it. *Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex.1975); *Medical Administrators, Inc.,* 668 S.W.2d at 723. The presumption of the judgment's validity can only be overcome by clear and convincing evidence that the foreign court lacked jurisdiction over the person. *Fuhrer v. Rinyu,* 647 S.W.2d 315, 317 (Tex.App.—Corpus Christi 1982, no writ) (op. on reh'g).

In the instant case, the New York judgment appears to be valid, final, and subsisting. Therefore, the burden of proving a lack of personal jurisdiction was on the appellee in the enforcement proceeding. *See Mitchim,* 518 S.W.2d at 364.

At the hearing on his motion to vacate, the appellee testified that Family Motors, Inc., a co-defendant located in Houston, Texas, requested him to repossess the appellants' car. The appellee believed that the car was in Houston. When he discovered the car was located in New York, he returned the assignment to Family Motors.

The appellee also testified that Family Motors then decided to ask Commercial Services Corporation, (CSC), a co-defendant located in New Jersey, to repossess the car. According to the appellee, Family Motors knew about CSC through the American Adjusters Financer's book; however, since Family Motors did not know the appropriate procedures for the repossession of cars, it asked the appellee to call CSC from their offices. After the appellee phoned CSC and advised it of the facts, Family Motors sent CSC the necessary authorization to

repossess the car. The car was then repossessed by CSC and it sent its report to Family Motors.

The appellee testified that his only other connection with CSC was that he subscribed to its newsletter, but he has never received a publication. He believes he became involved in the lawsuit as a result of giving CSC, upon request, his name and address. Although CSC had inquired how much he charged to repossess vehicles located in Texas and the appellee was willing to do business in the future with CSC, he never received an assignment from CSC.

In regard to compensation, the following exchange took place at the hearing:

Q. (Mr. Loomis): Were you paid for your services?

A. (The appellee): To locate the car in Texas, yes, I was.

Q. And were you paid for your services when you located the car in New York?

A. That's what I was paid, to locate it up there.

The appellee also testified that he was not paid for calling CSC.

The appellee further stated that although his business is confined to Texas, he sometimes cooperates with investigators in other states. He stated that he has passed along orders to repossess cars to adjusters located in other states, but he has not received similar orders from out-of-state adjusters.

Where a defendant is not present in the forum, due process only requires that in order to subject him to a judgment in personam, he have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In those cases in which jurisdiction is based upon the defendant's occasional activities, it is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and pro-

tections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

■ It is clear that a Texas court, when asked to give full faith and credit to another state's judicial proceedings, may collaterally inquire into the jurisdiction of the foreign court to enter the judgment in question. *Layton v. Layton,* 538 S.W.2d 642, 646 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). Therefore, to resolve this question, we look to New York law. *See O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 341 (Tex.1966); *Shelby International Inc. v. Wiener,* 563 S.W.2d 324, 326 (Tex.Civ. App.—Houston [1st Dist.] 1979; no writ).

Under the State of New York's long-arm statute, a court may exercise personal jurisdiction over any nondomiciliary, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce

4. owns, uses or possesses any real property situated with the state.

N.Y.Civ.Prac.Law § 302 (McKinney 1972 & Supp.1986).

In the instant case, it is clear that subsections (2) and (3) of the long-arm statute do not apply. The record does not reflect that the appellants have ever alleged that the appellee committed a tortious act in New York or in another state. Subsection (4) is also inapplicable because the appellee testified at the hearing that he does not own property in New York and has never visited the state. Therefore, in order for the New York court to have lawfully exercised jurisdiction over the appellee, the facts must meet the requirements of subsection (1), that is, the appellee must have transacted business within the state or contracted "anywhere to supply goods or services in New York."

In the interpretation of their long-arm statute, the New York courts have recognized that it is a "single act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." *Alan Lupton Associates v. Northeast Plastics, Inc.,* 105 A.D.2d 3, 482 N.Y.S.2d 647, 650 (1984). Jurisdiction may be exercised over a nondomiciliary defendant who transacts "any" business within New York whether or not the defendant is physically present, as long as the business activity is sufficiently purposeful. *Id.* However, while physical presence is not a prerequisite to constitute transaction of business, with few exceptions, New York courts have not upheld jurisdiction in its absence. *Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corp.,* 54 A.D.2d 647, 387 N.Y.S.2d 635, 637 (1976).

New York courts will also have jurisdiction over a nondomiciliary who contracts outside of New York to supply goods or services in New York even though the goods are never shipped or the services are never supplied in New York, so long as the cause of action arose out of that contract. *Alan Lupton Associates,* 482 N.Y.S.2d at 650. As a general rule, the place where a contract is performed is more important for jurisdictional purposes than the place where the contract is executed. *Id.* at 651.

Where jurisdictional issues are raised under the long-arm statute, the totality of the defendant's activities must be examined to determine whether or not he performed a sufficiently purposeful activity in New

York to confer jurisdiction. *Aero-Bocker Knitting Mills, Inc.,* 387 N.Y.S.2d at 637.

The appellee had no actual contact with the State of New York. The nearest act that could be considered a contact with the State of New York was his call to CSC in New Jersey at the request of Family Motors; however, CSC handled the repossession of the car in New York. The appellee has had no other contacts with the State of New York and has never lived, worked, or transacted business in that state.

█ The appellants argue that the appellee transacted business or contracted with CSC for the repossession of their car in New York, and is, therefore, subject to the jurisdiction of New York courts. The appellants maintain that the appellee admitted he was involved in the repossession. In his motion to vacate, the appellee stated that:

> Combs retained Commercial Services Corp. to repossess a motor vehicle from Plaintiffs who had skipped with the motor vehicle to the state of New York. Said motor vehicle was thereafter repossessed by Commercial Services Corp., a company with which Combs had never done any business, nor had any contact. Commercial Services Corp. was hired as an independent contractor to effect the repossession of the auto.

Assertions of fact that are not pleaded in the alternative in a party's live pleadings are regarded as formal judicial admissions. *Houston First American Savings v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence. *Id.* The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact. *Id.* at 769. In the instant case, the appellants failed to object to the appellee's testimony that contradicted the statements made in his motion.

New York law provides that the activities of a representative of a nondomiciliary in New York may be attributed to it if it requested the performance of those activities and the activities benefit it, regardless of whether the representative acted as an agent or independent contractor. *Alan Lupton Associates,* 482 N.Y.S.2d at 651. The critical factor is the degree of control the defendant principal exercises over the agent. *Id.*

█ In the instant case, the appellee only called CSC on behalf of Family Motors. He was not compensated for doing so and had no further involvement with the repossession of the appellants' car. Family Motors forwarded the authorization to CSC for the repossession, and when the car was repossessed, CSC sent its report to Family Motors. There is no evidence in the record that the appellee had the slightest degree of control over CSC or that he benefited from the repossession. There is also no evidence that the appellee had the ability to contract with CSC or that he did so. Under such circumstances, the totality of the appellee's acts do not satisfy the requirements of New York's long-arm statute. *See Etra v. Matta,* 61 N.Y.2d 455, 474 N.Y.S.2d 687, 688, 463 N.E.2d 3, 4 (1984) (holding that where a Massachusetts doctor referred a New York resident to a New York doctor but continued to act as a consultant on the patient's case by communicating with the New York doctor by telephone and letters and prescribing additional provisions of an experimental drug, the doctor's contacts with New York were too insubstantial to amount to such a transaction of business to warrant subjecting the doctor to jurisdiction in New York); *L.F. Rothschild, Unterberg, Towbin v. McTamney,* 89 A.D.2d 540, 452 N.Y.S.2d 630, 631, *aff'd,* 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275 (1983) (holding that where a Pennsylvania company's only contact with New York was several telephone conversations with a New York company, such communications were not sufficient to confer personal jurisdiction over the nonresident); *Perlman v. Martin,* 70 Misc.2d 169, 332 N.Y.S.2d 360 (1972) (holding that telephone calls from a person in Washington, D.C. to

New York for the purpose of retaining a lawyer were, by themselves, an insufficient basis for jurisdiction under the long arm statute).

The appellants' point of error is overruled, and the judgment of the trial court is affirmed.