OPINION AND DISMISSAL ORDER
 

 REBECCA BEACH SMITH, District Judge.
 

 This matter comes before the court on defendants’ motion to dismiss the complaint for lack of subject matter jurisdiction, or for failure to state a claim. For the reasons set forth below, the motion to dismiss is GRANTED.
 

 7.
 
 Factual and Procedural History
 

 In the late 1970s, plaintiffs opened investment accounts with defendant Investec Ernst & Company, Inc. (“Investec”), a New York investment brokerage house. Defendant Frederick Gordon Brackis (“Brackis”), an employee of Investec, managed the accounts as plaintiffs’ financial advisor. Plaintiffs allege that Brackis managed the accounts contrary to their investment objectives, and in a negligent manner, in violation of § 10(b) of the Securities and Exchange Act of 1934. Plaintiffs further allege that Brackis breached fiduciary duties to plaintiffs and made false statements regarding their investments, and that Investec failed to properly supervise Brackis. Plaintiffs claim losses exceeding $370,000.
 

 
 *DCCCLIII
 
 The securities agreement entered into by plaintiffs with Investec states that “all controversies which may arise between the parties concerning any transaction ... shall be determined by arbitration.” (Compl. Ex. A ¶ 17.) The National Association of Securities Dealers, Inc. (“NASD”) is named as an appropriate arbiter.
 
 (Id.)
 
 The agreement additionally contains a choice of law provision designating New York law for the purposes of construing the agreement and the rights of the parties under it.
 
 (Id.
 
 ¶ 14.)
 

 On October 23, 2003, plaintiffs submitted an Amended Statement of Claim with NASD requesting an arbitration hearing.
 
 (Id.
 
 Ex. B ¶ 8.) On November 24, 2003, before any arbitration began, defendants filed a petition in the Supreme Court of the State of New York, seeking an order to stay the arbitration and declare that the claims asserted by plaintiffs in the arbitration are time-barred under the applicable statute of limitations.
 
 (Id.
 
 Ex. C ¶ 1.)
 
 [1]
 

 On November 26, 2003, the Supreme Court of New York entered an Order to Show Cause, temporarily staying the arbitration, and ordering plaintiffs to appear on December 17, 2003, to show cause why the arbitration should not be stayed.
 
 (Id.
 
 Ex. D at 1-2.) On December 12, 2003, plaintiffs filed a limited appearance to object to personal jurisdiction in the New York Supreme Court. (Travin Aff. Ex. A.) Plaintiffs’ limited appearance stated that “[d]ue to this Court’s lack of personal jurisdiction over them, Respondents will not be present at the hearing scheduled by this Court on December 17, 2003.”
 
 (Id.
 
 Ex. A ¶ 3.)
 

 Also on December 12, 2003, plaintiffs filed the instant complaint in this court. Plaintiffs pray for an order (1) compelling arbitration, (2) declaring that New York courts have no personal jurisdiction over plaintiffs in this matter, (3) vacating any orders entered by the New York Supreme Court regarding this matter, and (4) awarding costs and attorneys’ fees. (Compl. at 7.)
 

 On December 17, 2003, the Supreme Court of New York entered an order continuing the temporary stay of the arbitration pending a decision on defendants’ petition. (Travin Aff. Ex. B at 1.) As plaintiffs had not appeared or filed opposing papers in the matter, the New York court marked defendants’ petition as “submitted on default.” (Defs.’ Reply Ex. A at 1.)
 

 On February 17, 2004, defendants filed their motion to dismiss the instant complaint. Plaintiffs responded on February 27, 2004, and defendants replied on March 8, 2004.
 

 Subsequent to the filing of defendants’ motion, on February 24, 2004, the Supreme Court of New York reached the merits of defendants’ petition. The court found that all arbitral claims were barred by the relevant Virginia statutes of limitation,
 
 [2]
 
 and accordingly dismissed the claims and stayed the arbitrations.
 

 II. Standard of Review
 

 A complaint should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its
 
 *DCCCLIV
 
 claim that would entitle it to relief.
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the complaint’s factual allegations as true and view all allegations in a light most favorable to the nonmoving party.
 
 Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
 
 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In addition to the allegations in the complaint, the court may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. 5A Charles A. Wright & Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 1357, at 299 (2d ed.1990),
 
 cited with approval in Anheuser-Busch v. Schmoke,
 
 63 F.3d 1305, 1312 (4th Cir.1995). An affirmative defense such as res judicata may be raised under Rule 12(b)(6) “only if it clearly appears on the face of the complaint.”
 
 Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,
 
 4 F.3d 244, 250 (4th Cir.1993).
 
 [3]
 

 III. Analysis
 

 Plaintiffs’ primary claim is for an order to compel arbitration; the declaratory and injunctive relief requested in attacking the New York judgment is ancillary to this claim.
 
 [4]
 
 The Federal Arbitration Act (“FAA”), 9 U.S.C. §§ 1-16, provides that “[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement.” 9 U.S.C. § 4. The FAA further requires a court to stay “any suit or proceeding ... brought in any of the courts of the United States upon any issue referable to arbitration.”
 
 Id.
 
 § 3. These provisions are mandatory, and a district court “has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.”
 
 Adkins v. Labor Ready, Inc.,
 
 303 F.3d 496, 500 (4th Cir.2002). Courts of this circuit have stayed state court actions under the authority of the FAA.
 
 E.g., Kellogg, Brown & Root v. Bragg,
 
 250 F.Supp.2d 664, 669 (S.D.W.Va.2003);
 
 E. Associated Coal Corp. v. Munson,
 
 266 F.Supp.2d 479, 489 (N.D.W.Va.2003).
 

 A. Rooker-Feldman Doctrine
 

 Defendants argue that plaintiffs’ claims are barred from consideration in this court because they have already been decided against plaintiffs in the New York Supreme Court. Defendants urge dismissal of the complaint for lack of subject-matter jurisdiction pursuant to the
 
 Rook-er-Feldman
 
 doctrine.
 
 [5]
 
 Under
 
 Rooker-Feldman,
 
 “a party losing in state court is barred from seeking what in substance would be appellate review of the state
 
 *DCCCLV
 
 judgment in a United States district court.”
 
 Johnson v. De Grandy,
 
 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).
 

 In this case, however, plaintiffs filed their federal complaint on December 12, 2003, more than two months prior to a final judgment on the merits by the New York Supreme Court on February 24, 2004. As a general rule, “the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.”
 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting
 
 McClellan v. Carland,
 
 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). More specifically, a federal-court suit to compel arbitration pursuant to the Federal Arbitration Act should not be stayed merely because there is a pending state-court action to stay arbitration.
 
 Id.
 
 at 7, 19, 103 S.Ct. 927.
 

 As plaintiffs have alleged diversity of citizenship and an amount in controversy exceeding $75,000, there is a valid basis for this court’s jurisdiction over plaintiffs’ arbitration claim.
 
 [6]
 
 Thus, at the time of filing, there was nothing inappropriate about plaintiffs’ pursuit of a federal forum for a claim which was pending before, but not yet decided by, a state court. As plaintiffs were not seeking an appeal of the state court decision, but rather an independent determination of an issue within eon-current state and federal jurisdiction,
 
 Rooker-Feldman
 
 is not implicated.
 
 [7]
 

 B. Res Judicata
 

 The New York Supreme Court decision bars consideration of plaintiffs’ claims through the application of res judi-cata, rather than the
 
 Rooker-Feldman
 
 grounds specifically urged by defendants. Federal courts are required to give the judicial proceedings of state courts full faith and credit. 28 U.S.C. § 1738. However, “before a court is bound by [a] judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court’s decree.”
 
 Underwriters Nat’l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass’n,
 
 455 U.S. 691, 705, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). If that court did not have jurisdiction over the parties, full faith and credit need not be given.
 
 Id.
 

 Thus, “[w]here jurisdiction is in dispute, the choice between a default and special appearance is crucial” for purposes of res judicata.
 
 Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.,
 
 770 F.2d 1228, 1233 n. 7 (4th Cir.1985). A defendant “is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.”
 
 Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,
 
 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). If instead, however, the defendant makes a special appear-
 
 *DCCCLVI
 
 anee to contest questions of jurisdiction, the judgment is entitled to full faith and credit “when the second court’s inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.”
 
 Durfee v. Duke,
 
 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1968).
 

 Here, plaintiffs have followed the first course, i.e., they have taken a default judgment in the New York court and seek to collaterally challenge that judgment on jurisdictional grounds in these proceedings. Although plaintiffs filed a “Limited Appearance to Object to Personal Jurisdiction” in the New York Supreme Court, this two-page document contains no case law or argument on the personal jurisdiction issue. Instead, it states that “[d]ue to this Court’s lack of personal jurisdiction over them, Respondents will not be present at the hearing scheduled by this Court on December 17, 2003.” (Travin Aff. Ex. A ¶ 3.) Thus, the “Limited Appearance” signals plaintiffs’ willingness to risk a default judgment in the New York court by declining to contest the jurisdictional issue there. The New York court appears to have read plaintiffs’ submission in the same light, as it stated that it considered the defendants’ petition to be both “submitted on default” and “granted on default.” (Defs.’ Reply Ex. A at 1, 5.) Moreover, the judgment of the New York court did not engage the issue of personal jurisdiction. Thus, personal jurisdiction was neither “fully litigated” nor “finally decided” in the New York state court, and can be challenged in this federal court.
 

 Therefore, if the judgment of the New York court is to be given full faith and credit in this litigation, this court must first determine that the New York court exercised valid jurisdiction over the parties. From the record before the court, it is evident that personal jurisdiction was valid.
 

 1. Personal Jurisdiction in New York
 

 A two-step test determines whether a non-domiciliary may be sued in New York.
 
 LaMarca v. Pak-Mor Mfg. Co.,
 
 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000). First, the court determines whether the New York long-arm statute, N.Y. C.P.L.R. 302, confers jurisdiction over the non-domiciliary in light of its contacts with the State.
 
 [8]
 

 LaMarca,
 
 95 N.Y.2d at 214, 713 N.Y.S.2d 304, 735 N.E.2d 883. If the relationship with New York falls within the terms of the long-arm statute, the court determines whether the exercise of jurisdiction comports with due process.
 
 Id.
 

 The New York long-arm statute confers personal jurisdiction over “any non-domiciliary ... who in person or through an agent ... transacts any business within the state.” N.Y. C.P.L.R. 302(a)(1). This provision has been construed to reach circumstances in which a non-domiciliary maintains an ongoing investment account in New York.
 
 Picard v. Elbaum,
 
 707 F.Supp. 144, 148 (S.D.N.Y.1989);
 
 L.F. Rothschild, Unterberg, Towbin v. Thompson,
 
 78 A.D.2d 795, 433 N.Y.S.2d 6, 7 (N.Y.App.Div.1980);
 
 Francis I. Dupont & Co. v. Chelednik,
 
 69 Misc.2d 362, 363, 330 N.Y.S.2d 149 (N.Y.App.Term.1971).
 

 A court’s exercise of jurisdiction over a non-domiciliary comports with due process only if that individual has “minimum contacts with [the forum] such that the maintenance of the suit does not offend ‘traditional notions of fair play and sub
 
 *DCCCLVII
 
 stantial justice.’ ”
 
 Int'l Shoe Co. v. Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). These contacts must have a basis in “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
 
 Burger King Corp. v. Rudzewiez,
 
 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting
 
 Hanson v. Denckla,
 
 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).
 

 Here, plaintiffs opened their investment accounts with defendants in the late 1970s. (Comply 8.) Defendant Investec’s main office is located in New York, and defendant Brackis is a resident of New York.
 
 (Id.
 
 ¶¶ 4-5.) At all relevant times, plaintiffs’ investment accounts were maintained with Brackis in Investec’s New York office.
 
 (Id.
 
 Ex. C ¶ 10.) Thus, plaintiffs have plainly maintained ongoing investment accounts in New York, and have therefore “transacted] ... business within the state” within the meaning of the New York long-arm statute.
 

 Moreover, by so doing, plaintiffs have purposefully availed themselves of the privilege of conducting activities in New York. Plaintiffs’ contacts with New York were not random or fortuitous; instead, plaintiffs deliberately reached out beyond their home state to establish investment accounts in New York which were maintained over a period of years. These contacts are sufficient to support personal jurisdiction for a claim regarding the maintenance of those accounts.
 
 See Burger King,
 
 471 U.S. at 480, 105 S.Ct. 2174 (holding that a Florida court could constitutionally exercise jurisdiction over a Michigan resident who had entered into a long-term -franchising relationship with a Florida corporation).
 

 2. Effect of the New York Judgment
 

 As the New York Supreme Court exercised valid jurisdiction over the parties, its judgment is entitled to full faith and credit in this court, and principles of res judicata apply. “A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judi-cata ... even if obtained upon a default.”
 
 Morris v. Jones,
 
 329 U.S. 545, 551, 67 S.Ct. 451, 91 L.Ed. 488 (1947). Under res judicata, “a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action.”
 
 Allen v. McCurry,
 
 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
 

 This case, like
 
 Moses Cone,
 
 involves both a proceeding in state court to stay arbitration and a proceeding in federal court to compel arbitration. Such proceedings involve “the identical issue of ar-bitrability of the claims.”
 
 Moses Cone,
 
 460 U.S. at 10, 103 S.Ct. 927. “Once the state court decide[s] the issue of arbitrability, the federal court [is] bound to honor that determination as res judicata.”
 
 Moses Cone,
 
 460 U.S. at 12, 103 S.Ct. 927;
 
 see also id.
 
 at 30, 103 S.Ct. 927 (“[R]es judica-ta or collateral estoppel would apply if the state court reached a decision before the District Court.”) (Rehnquist, J., dissenting).
 
 [9]
 
 Moreover, an order compelling arbitration pursuant to the FAA could have been sought in the New York state court.
 
 GAF Corp. v. Werner,
 
 66 N.Y.2d 97, 105, 495 N.Y.S.2d 312, 485 N.E.2d 977 (1985) (holding that New York state courts are obligated to issue orders to compel arbitra
 
 *DCCCLVIII
 
 tion pursuant to Federal Arbitration Act). An issue which “could have been raised” in a prior action is barred from consideration in a later action.
 
 Allen,
 
 449 U.S. at 94, 101 S.Ct. 411.
 

 As res judicata bars reconsideration of the merits of plaintiffs’ claims, plaintiffs cannot prove any set of facts that would entitle them to relief, and their complaint must be dismissed.
 

 IV. Conclusion
 

 For the reasons stated above, defendants’ motion to dismiss the complaint is GRANTED. The Clerk is DIRECTED to forward a copy of this Opinion and Dismissal Order to the parties.
 

 IT IS SO ORDERED.
 

 [1]
 

 . New York Civil Practice Law and Rules § 7503(b) provides that if "the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court.”
 

 [2]
 

 . The New York court applied Virginia statutes of limitation pursuant to New York’s borrowing statute, N.Y. C.P.L.R. 202.
 

 [3]
 

 . Here, proceedings before the Supreme Court of the State of New York are clear on the face of the complaint. (Compl. ¶¶ 1, 14-15.)
 

 [4]
 

 . Generally, a collateral attack on the validity of a judgment can arise in one of two ways.
 
 Restatement (Second) of Judgments
 
 § 81 cmt. a. First, “the judgment itself may be the basis of a plaintiff’s action to enforce it, and the ground for avoiding its effect set up as a defense to the action.”
 
 Id.
 
 Alternatively, "the plaintiff's action may be initiated on the premise that the judgment is avoidable and the judgment set up as a defense by the opposing party; the attack on the judgment is then made in avoidance of the defense.”
 
 Id.
 
 The collateral attack here is of the second type.
 

 [5]
 

 .The doctrine derives its name from
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and
 
 D.C. Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).
 

 [6]
 

 . Although the Federal Arbitration Act creates federal substantive rights, it does not provide a basis for federal question jurisdiction.
 
 Whiteside v. Teltech Corp.,
 
 940 F.2d 99, 102 (4th Cir.1991). Accordingly, subject matter jurisdiction for an FAA claim in federal court must rest on some basis independent of the FAA, such as diversity of citizenship.
 
 Id.
 

 [7]
 

 . The Fourth Circuit has held that "the order in which the federal action was filed and the state decision issued is a relevant, but not controlling, consideration” in determining the applicability of
 
 Rooker-Feldman. Am. Reliable Ins. Co. v. Stillwell,
 
 336 F.3d 311, 318 (4th Cir.2003). Flowever, the flexibility inherent in the
 
 American Reliable
 
 rule is aimed at litigants who engage in ploys to nullify
 
 Rook-er-Feldman s
 
 application, such as filing a federal complaint while the state action is still pending, but serving it on the opposition only after an unfavorable decision in the state court.
 
 Id.
 
 This case does not present any such jurisdictional ploys.
 

 [8]
 

 . The New York long-arm statute “does not confer jurisdiction in every case where it is constitutionally permissible.”
 
 Kreutter v. McFadden Oil Corp.,
 
 71 N.Y.2d 460, 471, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988).
 

 [9]
 

 . Although decided one month before
 
 D.C. Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), it is perhaps worth noting that
 
 Moses Cone
 
 discussed this issue exclusively in terms of res judicata, rather than in the jurisdictional terms of
 
 Rooker.